**RAZORCOM TELEPH &
NET, LLC, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–450C.

United States Court of Federal Claims.

April 7, 2003.

Sam Z. Gdanski, Suffern, New York, for plaintiff. With him was Scott Gdanski, of counsel.

Nancy M. Kim, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant. With her were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Donald E. Kinner, Assistant Director, and Jill A. Eggleston, of counsel.

*OPINION*

BRUGGINK, Judge.

This post-award bid protest stems from a request for proposals initially issued by the United States Marine Corps on July 15, 2002. The contract was eventually awarded to Nextira One Federal. Plaintiff's protest to the United States General Accounting Office ("GAO") was denied as untimely. Plaintiff filed its complaint here on February 27, 2003.

Pending are the parties' Rule 56.1 cross-motions for summary judgment on the administrative record. Oral argument was held on April 4, 2003. The following order further explains the bench ruling issued on that date, granting defendant's motion for summary judgment.

BACKGROUND

The United States Marine Corps (hereinafter, "the agency") issued a request for proposals, seeking telephone system maintenance services at the Marine Corps Support Activity, in Kansas City, Kansas. The request was originally a set-aside for small business concerns. Plaintiff, Razorcom Teleph & Net, LLC ("Razorcom"), was the only bidder. The agency estimated a cost of $90,000. Razorcom bid $321,368.44. Consequently, the solicitation was cancelled and reissued on September 6, 2002, without the small business set-aside. The initial deadline for bids was October 10, 2002.

The Contracting Officer ("CO"), Sandi Brackney, and plaintiff communicated primarily through e-mail. Plaintiff's e-mail address is *whiskey4@bellsouth.net.* The record contains a number of successful exchanges between the CO and Larry Williams, presi-

dent of Razorcom. The September 20 e-mail from the CO, for example, addressed "To: <*whiskey4@bellsouth.com*>" is typical. That message, individually sent to plaintiff, was the notification announcing Amendment 1, which established the schedule for site visits. There is no question that plaintiff received the e-mail. The record contains an electronic receipt for that message, dated September 23.

Larry Williams e-mailed the CO on September 23, furnishing the names of plaintiff's personnel involved in the site visit. The display name merely reads, "whiskey4." On September 24, the CO responded directly to that message and forwarded directions to Razorcom for the upcoming site visit. The "To:" portion reads somewhat differently from the September 20 e-mail, in that a display name, "whiskey4," appears in front of Razorcom's address. Plaintiff received this message and sent representatives to the site visit. The agency was also able to produce an e-mail receipt for this message.

On October 7, the CO sent an e-mail to Razorcom directed to Mr. Julius Foster, one of plaintiff's employees. The message was a notification that the agency was "still trying to get all the answers to the questions, [posed as a result of the site visit] we are expecting to extend the closing date to 10–18–02. I will email the amendment as soon as it becomes available." Plaintiff received this message, addressed to plaintiff's e-mail address, without use of the more formal display name.

Plaintiff's memorandum in support of the motion for summary judgment contains the following allegations of what plaintiff did next: "Razorcom eagerly awaited the new solicitation;" "Razorcom anticipated the arrival of the e-mail;" "Razorcom anxiously awaited the issuance of the new solicitation;" "Razorcom anxiously waited for the promised e-mail to arrive;" "Razorcom ... constantly monitored its e-mail;" "Razorcom was anxiously awaiting Amendment 2 in order to submit a bid;" and "Razorcom waited for Amendment 2 to be sent via e-mail." Despite its anxiety, plaintiff did nothing to contact the agency until October 24 when Mr. Williams and Mr. Foster telephoned the CO to inquire about the amendment. She told them that the solicitation was closed. Amendment 2 had been sent out on October 10 announcing that the new closing date would be October 22. The contract was later awarded to Nextira One Federal.

Five companies bid on the new solicitation. Nextira One Federal was both the lowest bidder, at a base year price of $96,926.40, and the highest rated bidder from a technical standpoint.

In order to demonstrate that she had sent Razorcom the announcement of Amendment 2, the CO furnished what she asserted was a "copy of the e-mail that was sent to you." It was not. Instead, it was a misdated copy of an e-mail sent to Lewis Foster, an individual employed at a different company which had not submitted a bid.

There is no e-mail receipt showing any message sent to Razorcom announcing Amendment 2. Instead, the agency offers other proof that the message was sent by a bulk, "blind" mailing to a pre-prepared group of recipients, including Razorcom. One is a log recording how notice was sent to the various bidders of the solicitation and the two amendments. Razorcom's correct e-mail address appears on the log, along with three check marks indicating an attempt to serve Razorcom with all three documents. This log, however, is probably based on the government's other evidence, which includes a copy of an e-mail announcement: "Attached is a copy of amendment 0002," with delivery shown on a number of display names, including "Whiskey4." There is no clear indication in the record that the CO had previously used the bulk mail feature with respect to this solicitation.

Plaintiff states that it never received the message announcing the new closing date. It disputes, moreover, the validity of defendant's "proof," on the grounds that the correct display name for plaintiff, according to the agency's own e-mail address book, is "Whiskey4—Razorcom Telephone & Net LLC," not the abbreviated version found in the list of recipients. Plaintiff points out, moreover, that the two versions of the bulk mail address list are not identical. One be-

gins with American Telephone, the other with Ameritech. "Whiskey4" appears on both lists, however.

Razorcom filed a challenge before the GAO, which dismissed the protest as untimely on February 4, 2003. The protest was not filed within ten days of October 10, the original closing date, thus making it untimely according to the GAO's internal filing deadlines.[1] Plaintiff thereafter brought its protest here.

## DISCUSSION

Plaintiff assumes as a fact that the agency did not send it an announcement containing the new closing date. On that assumption, it claims the agency violated 48 C.F.R. § 14.205–1(c) (2002), which provides that "The names of prospective bidders who are furnished invitations in response to their requests shall be added to the list of those initially mailed copies of a particular solicitation, so that they will be furnished copies of any solicitation amendments, etc." Razorcom claims that, because it should have, but did not, receive the amendment notification, it was prejudiced and the solicitation should be reopened.

■ The government begins with the familiar defense that the protestor has no standing, notwithstanding the irony of claiming that only bidders can have standing to protest a lost opportunity to bid. The concept of interested party is broad enough to leave room for a non-bidder to assert that an alleged agency error lead to its failure to bid. The Federal Circuit in *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed.Cir.2001), adopted the definition of interested party set out in 31 U.S.C. § 3551(2) (Supp. IV 1998) for use in this court, which Congress intended for use by the GAO. That section defines an interested party as: "an actual or prospective bidder or

offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2). Razorcom was plainly a "prospective bidder."

The government suggests that *MCI Telecommunications Corp. v. United States*, 878 F.2d 362 (Fed.Cir.1989), is to the contrary. We disagree. The statute applied there, relating to the General Services Board of Contract Appeals now-extinct bid protest jurisdiction, was not the same as § 3551(2), although it was very similar.[2] The court rejected a post-award bid protest by a non-bidder, holding that "the solicitation must be outstanding when protested in order for those having not yet submitted bids to be considered prospective bidders on the proposed contract." *Id.* at 365. The protestor in that case had not bid on the original contract. Nor did it take the position that, but for the asserted error, it would have bid. Rather, its ground for protest arose only because of the agency's actions subsequent to the receipt of offers. The facts, in short, are very different. Nor do we believe that the court was establishing a rule of sufficient breadth to encompass the present facts. We hold that Razorcom has standing to claim that its inability to bid was due to the agency's failure to send it a copy of the amended solicitation.

■ We thus arrive at the merits. We begin with whether we can accept plaintiff's factual premise-that the agency did not follow its regular procedures in sending Razorcom a copy of the second amendment. We have the plaintiff's evidence of non-receipt. Mr. Larry Williams, in his affidavit, testifies that his company never received the much-awaited e-mail. There is the fact that printouts of bulk mail screens related to the procurement are somewhat inconsistent, and re-

---

1. GAO protests must be filed no later than ten days after the basis of the protest was or should have been known. 4 C.F.R. § 21.2(a)(2)(2002). The GAO reckoned that "when the original closing date came and passed without Razorcom receiving an amendment, Razorcom knew or should have known all of the information necessary for it to complain ... that the agency improperly failed to provide it with the amendment

extending the closing date." *Razorcom Teleph & Net, LLC,* B–291640 (February 4, 2003).

2. Now repealed, 40 U.S.C. § 759(f)(9)(B) (Supp. V 1987), provided that an interested party to a GSA protest was "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."

flect a shortened display name for plaintiff. We have the purported bafflement of Tony Champagne, an agency computer specialist, as to why the plaintiff's display name seems to have been abbreviated in the addressee list.

It plainly would have been much preferable if the CO had retained a copy of the e-mail by which she sent, in bulk, the notice of the extension of the closing date. It would also have been helpful if the agency had attempted to engage the bulk mail feature after the protest to verify whether it worked with respect to Razorcom. We are equally puzzled by the half-hearted efforts of the agency to explore the protocols of its e-mail system. Nor do we have any record proof that the agency notified potential bidders of the availability on its web site of the status of the procurement, as it asserts in briefing.

What the agency does have is the CO's affidavits, in which she states that she used a bulk mailing feature to send amendment 2, that plaintiff was on that list, that she routinely asks for return receipts when she sends out an e-mail, that, shortly after sending amendment 2, she began to receive receipt confirmations, that she does not recall from whom she received confirmations, and that she deleted those confirmations. We have the affirmative evidence of the group distribution list which includes plaintiff's e-mail address. We have the CO's manual record of a successful mail-out to Razorcom of the amendment, from which are left to infer that she was not notified by her e-mail system of a failure of delivery to plaintiff.

The fact that the two iterations of the bulk mail-out address list are not identical does not help plaintiff, as its name appears in both lists. Nor does the court attach as much significance as does plaintiff to the truncated form of the display name which appears in the mailing list. That same abridgement appeared whenever plaintiff mailed directly to the CO. We note, as well, that the only name in the bulk mail list which seems divided by a hyphen is that of Razorcom.

The agency can be held accountable for no more than trying, in good faith and competently, to mail notices to interested parties. Beyond that, as defendant urges, the agency should not be held to be a guarantor of delivery. The circumstantial evidence here is sufficient to find that it is more likely than not that the agency did, in fact, attempt to direct an e-mail notice to Razorcom at *"whiskey4@bellsouth.net"* using its standard procedures. The glitches to which plaintiff refers may suggest some bugs in the system (reversal of first names in the addressee list) or carelessness (sending the wrong e-mail to plaintiff as proof of mailing), but these do not directly call into question the sending of the e-mail to Razorcom. Plaintiff, therefore, has not established a violation of § 14.205–1(c).

Assuming, however, that the agency did not, in fact, direct an e-mail to plaintiff, and that a violation of § 14.205–1(c) is established, we nevertheless would not grant an injunction. This is a request for extraordinary relief, and plaintiff has not demonstrated an entitlement to it.

We begin with the requirement that one who seeks equity must have been diligent in protecting its rights. *See, e.g., LaForge & Budd Constr. Co., Inc. v. United States,* 48 Fed.Cl. 566, 570 (2001). Although the court does not enforce the same rigid time restrictions applicable to GAO protests, the same principles apply here. We are not persuaded that the agency and other bidders should suffer the inconvenience of a new solicitation, particularly one in which everyone now knows the amount of the winning bid, when plaintiff had the best opportunity to avoid its predicament by picking up the telephone or sending an e-mail to the agency. Razorcom was not displaying an instinct for self-protection when it sat idly by its computer and watched October 10 pass, the only closing date it knew of for a certainty, and then October 18, the putative new closing date. If Razorcom had exhibited a modicum of curiosity when October 18 went by without any word from the agency, it might have found out in time about the new closing date of October 22. The Competition in Contracting Act [3] protects fair and open competition, but

---

**3.** Codified at various locations in Titles 10, 31, and 41. *See, e.g.,* 10 U.S.C. § 2304(a)(1)(A) (2000).

it does not wholly abandon an assumption of Darwinian principles.

In addition, it is far from clear that plaintiff would suffer an irreparable injury if the solicitation were not reopened. Razorcom asserts that losing the contract cost it "hundreds of thousands of dollars in lost profits." Even over the entire potential contract term, this assertion is difficult to credit, given the amount of the current contract. Moreover, Razorcom had an unimpeded shot at this procurement in September, 2002. Its base year bid, however, was more than three times the agency estimate. The rough validity of the agency's estimate is attested to by the subsequent bids, which included two that were relatively close to the estimate. Here it strikes the court as improbable, even with the understanding that the first procurement was a small business set-aside, that Razorcom would have been willing to underbid its original offer by some seventy percent.[4]

An additional factor the court must consider is whether issuance of an injunction would cause harm to the public. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir.1993). In this regard, the court is confronted with the statement of General Richard L. Kelly, the head of the agency contracting activity, in which he explained to the GAO the need to go forward with the procurement despite the otherwise automatic stay to which plaintiff would have been entitled at the GAO. He explains that there is a pressing need to repair the three private branch exchange telephone switches at issue. They are critical to the Marines' ability to coordinate mobilization of the USMC Individual Ready Reserve and individual mobilization augmentees with Headquarters, USMC. Given the need to be able to contact individual reservists in light of the current hostilities in Iraq, which broke out after the General's affidavit, we will not second guess his assessment.

Finally, we note that the public interest here lies in favor of treating this as a closed procurement. The public interest in full and open competition has been satisfied, despite the absence of plaintiff's bid. The agency received five competitive bids. The winning bid was very close to the government estimate and was apparently very satisfactory from a technical standpoint. Given the size of plaintiff's bid, there would seem to be little markup to the public in cancelling the solicitation, paying termination costs, and going through a re-solicitation.

### CONCLUSION

In sum, plaintiff has not proved a violation of procurement regulations, much less arbitrary or capricious conduct on the part of the agency. Even if it had, the court would not grant injunctive relief in light of the other factors outlined above. Defendant's motion for summary judgment is granted. The clerk is directed to dismiss the complaint. No costs.

---

4. Nothing in the administrative record or supplemental materials permits the court to infer that the changes embodied in Amendment 2 significantly decreased the statement of work.

