**BANNUM, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–839 C.

United States Court of Federal Claims.

May 8, 2003.

Kevin M. Cox, Auburn, New York, for plaintiff. Joseph Camardo and Kevin P. Ryan, Auburn, New York, of counsel.

Richard P. Schroeder, with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Bryant G. Snee, Assistant Director, and David Harrington, United States Department of Justice, for defendant. Catherine Day, Federal Bureau of Prisons, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This pre-award bid protest action comes before the court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (TRO Mot. or TRO Motion). Plaintiff, Bannum, Inc. (Bannum), protests the failure of the Bureau of Prisons (BOP) to award a contract to operate a Community Correction Center (CCC) in Beaumont, Texas, in a timely manner. Complaint (Compl.) ¶ 1. For the following reasons, the court DENIES plaintiff's motion.

The complaint was filed on April 28, 2003. During a telephonic status conference held on April 28, 2003, the court set a hearing on this matter for the morning of April 30, 2003, and invited the parties to submit additional briefing at any time up to the beginning of the hearing. Plaintiff submitted additional briefing on April 29, 2003. Plaintiff's Supplemental Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Pl.'s Supp.). Defendant submitted additional briefing on the morning of April 30, 2003, in the form of Defendant's Opposition to Plaintiff's Motion for a Temporary Restraining Order (Def.'s Opp.), to which it attached a declaration of Ms. Catherine Mains. At the hearing, the court heard oral argument and the testimony of two witnesses, Mr. David Lowry, executive director of Bannum, Inc., Transcript of Hearing held April 30, 2003(Tr.) at 32–33, and Mr. William L. Willingham, a retired official of the Bureau of Prisons. Tr. at 116–17. The court also received twelve exhibits [1] and accepted as true

---

1. Plaintiff marked 16 exhibits for identification purposes, Tr. at 4–5, but the court admitted only

for the purposes of this decision a proffer of telephonic testimony from a third witness, Mr. Donald Holt, the director of Bannum's Beaumont facility, Tr. at 99, in support of plaintiff's motion for injunctive relief.[2]

At the conclusion of the hearing, the court issued a bench ruling denying plaintiff's motion. Tr. at 158–62. This opinion states in further detail the grounds for the bench ruling and, in any respect inconsistent with the bench ruling, shall be deemed to supercede the bench ruling. At the hearing, the court also heard argument as to whether, if injunctive relief were denied, the complaint should be dismissed. Tr. at 150–52, 156–57. In its bench ruling, the court stated that it would determine whether, in light of the court's denial of injunctive relief, the complaint should be dismissed. Tr. at 149–50.

## I. Background

When Bannum filed its complaint on April 28, 2003, it was the incumbent contractor on a CCC contract to operate a halfway house in Beaumont, Texas. Compl. ¶ 6. The incumbent contract was originally scheduled to expire on October 31, 2002. Declaration of Catherine Mains (Mains Decl.) ¶ 8. The BOP invoked its option to extend the contract for a period of 180 days, leading to the termination of the contract on April 30, 2003. *Id.* Defendant issued Request for Proposals No. 200–0722–SC (RFP) on November 27, 2001,

for a follow-on contract for CCC services in the Beaumont, Texas area. Compl. ¶ 7.

The source selection process has been long and drawn out, with at least two potential offerors, including Bannum, changing plans mid-stream. Tr. at 52, 108. Plaintiff's original plan was to operate a new facility in Beaumont (referred to in testimony as the "Broadway" site). Tr. at 37. In order to operate the Broadway site, however, plaintiff was required to obtain zoning approval. Tr. at 39. The quest for zoning approval became problematic. Tr. at 62–63. After its application for zoning approval was rejected, plaintiff decided to change its proposal to continue operation at its existing Pennsylvania Avenue site. Tr. at 52; *see also* Compl. ¶ 6. At least one other offeror for this project also changed its proposed site prior to the due date for best and final offers. Tr. at 108.

Plaintiff contends that "the BOP is purposely unreasonably delaying the award of the contract so that Bannum will be eliminated from the competitive range by the loss of its zoning and facility rights, and so the BOP can then direct the award of the contract to [another offeror]." Compl. ¶ 14. According to plaintiff, defendant has "not fairly and honestly considered Bannum's proposal, and has no intention of awarding the follow-on contract to Bannum." *Id.* The current contract, and Bannum's lease for its CCC facility, both terminate on April 30, 2003. Tr. at 107; Compl. ¶ 12.

---

12 of those exhibits into evidence. Tr. at 36 (Exh. 1A); 39 (Exh. 1); 42 (Exh. 2); 44 (Exh. 3); 46 (Exh. 4); 49–50, 53–55 (Exh. 5, introduced to show notice, not truth of the matter); Tr. at 52–53, 58–61 (Exh. 7, introduced to show notice, not truth of the matter); Tr. at 64–65 (Exh. 8, introduced to show notice, not truth of the matter); Tr. at 66 (Exh. 9); Tr. at 70 (Exh. 10); Tr. at 71–72 (Exh. 12, introduced to show notice, not truth of matter); and Tr. at 73–74 (Exh. 13).

2. Without an administrative record to rely upon, the court decided to hear live testimony as part of its hearing on the TRO Motion to resolve this case. In reviewing the decision-making process of an agency, the court is " 'generally limited to the administrative record developed by the agency.' " *Rust Constructors, Inc. v. United States,* 49 Fed.Cl. 490, 496–97 (2001) (quoting *Marine Hydraulics Int'l, Inc. v. United States,* 43 Fed.Cl. 664, 670 (1999)). But the court will permit supplementation of the record when it is "neces-

sary 'to preserve meaningful judicial review.' " *Process Control Techs. v. United States,* 53 Fed.Cl. 71, 76 (2002) (quoting *SDS Int'l v. United States,* 48 Fed.Cl. 759, 765 (2001)). Further, the Court of Appeals for the Federal Circuit has noted that "testimony will be ordered only in 'rare circumstances.' " *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1338 (Fed.Cir.2001) (quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)). In this case, where the procurement was ongoing and the allegations of delay and bad faith related to matters that could reasonably be expected to be adequately addressed by plaintiff's witnesses and related documentary evidence, the court found the appropriate "rare" circumstances for the admission of live testimony. The live testimony of plaintiff's witnesses allowed the court to evaluate plaintiff's claim in a timely manner while minimizing interference in an ongoing procurement.

Plaintiff in this case seeks two alternative injunctive measures. First, plaintiff seeks "an order compelling defendant to make an award decision on the contract before April 30, 2003." Compl. at 8. Second, "plaintiff seeks a temporary restraining order from the Court to compel defendant to maintain the status quo with respect to the residents at Bannum's Beaumont CCC facility until a contract award has been made, through the issuance of a purchase order to plaintiff for temporary CCC services at its present facility in Beaumont pursuant to 'unusual and compelling urgency[.]' " Compl. at 8.

## II. Plaintiff's Motion for Temporary Restraining Order

### A. Standard of Review

The court will grant injunctive relief if a plaintiff meets a four-part test: (1) a specific, irreparable injury if the court does not enjoin contract performance; (2) a substantial likelihood of success on the merits; (3) the harm to plaintiff outweighs the harm to defendant; and (4) preliminary relief is in the public interest. 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure (Wright & Miller) § 2948 (1995); *W & D Ships Deck Works, Inc. v. United States,* 39 Fed.Cl. 638, 647 (1997) ("When deciding if a TRO is appropriate in a particular case, a court uses the same four-part test applied to motions for a preliminary injunction."). A TRO or preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, § 2948. Courts reviewing the award of government contracts under the so-called *Scanwell* jurisdiction, *Scanwell Labs., Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970), advised a stringent application of judicial restraint in the grant of injunctive relief, particularly with respect to the court's determination of plaintiff's likelihood of success on the merits. *Princeton Combustion Research Labs., Inc. v. McCarthy,* 674 F.2d 1016, 1019 (3d Cir. 1982); *Saco Defense Sys. Div., Maremont*

*Corp. v. Weinberger,* 606 F.Supp. 446, 450 (D.Me.1985). This advice seems particularly apt where, as here, the agency action is accorded the deference of review under the standards set forth in the Administrative Procedure Act. 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.")

### B. Application of Test for Injunctive Relief to Plaintiff's Claim

#### 1. Irreparable Injury

■ To demonstrate an irreparable injury, a plaintiff must show that without a preliminary injunction or TRO it will suffer irreparable harm before a decision can be rendered on the merits. Preliminary relief is generally not available if money damages would provide an adequate remedy. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, § 2948.1; *Hughes Network Sys., Inc. v. InterDigital Communications Corp.,* 17 F.3d 691, 694 (4th Cir.1994); *Nuclear–Chicago Corp. v. Nuclear Data, Inc.,* 465 F.2d 428, 430 (7th Cir.1972). Only in extraordinary circumstances, such as the prospect of insolvency or an inability to collect damages, will monetary damages alone give rise to irreparable harm. *See, e.g.,* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, § 2948.1; *Hughes,* 17 F.3d at 694; *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir.1984).[3]

Plaintiff argues that the threat of irreparable injury here is great because further delay in awarding the contract will result in plaintiff losing "its facility and zoning rights," and therefore its elimination from the competitive range. TRO Mot. at 7; Compl. ¶ 14. If injunctive relief is not awarded and plaintiff loses its right to continue using its present facility, "the BOP will have to transfer all of the present inmates to another location, and Bannum will have to terminate the employment of all of its workers at the facility." TRO Mot. at 8. In order to put plaintiff's claimed irreparable injury in context, it is

---

**3.** In this case, plaintiff introduced no evidence of prospective monetary damages and relied entirely on its prospective loss of facility and zoning rights. *See* TRO Mot. at 7; Tr. at 148.

helpful to review the solicitation process here.

This contract was first solicited on January 28, 2002. Plaintiff's Exhibit Received at the Hearing held on April 30, 2003 (Pl.'s Ex.) 1A; Tr. at 35–36. The closing date was established for March 28, 2002, Pl.'s Ex. 1A, and Bannum submitted its proposal on March 26, 2002. Pl.'s Ex. 1; Tr. at 38. After the BOP determined which offers were in the competitive range, revised proposals were due on June 28, 2002. Pl.'s Ex. 2 at 4; Tr. at 40–42. Plaintiff submitted its revised proposal on June 26, 2002, but indicated that it had not, as of that date, been able to obtain zoning approval for its proposed Broadway facility. Pl.'s Ex. 3 at 4–5; Tr. at 43–44. Because of this problem, on August 27, 2002, plaintiff notified the BOP that it was amending its proposal by changing the proposed site of the CCC to the Pennsylvania Avenue location, at which it already had zoning approval. Pl.'s Ex. 8; Tr. at 56–58, 62–64. After this change was made, the BOP again set a due date for revised proposals, November 11, 2002. Pl.'s Ex. 10 at 3; Tr. at 69. Bannum submitted its revised proposal on that date. Pl.'s Ex. 12; Tr. at 70–72. On January 20, 2003, plaintiff was notified that best and final offers were due on January 24, 2003, Pl.'s Ex. 13, Tr. at 73–74, and Bannum submitted its best and final offer on January 23, 2003. As of April 30, 2003, the contract had not been awarded. *See* Mains Decl. ¶ 12.

The incumbent contract, Compl. ¶ 12, and plaintiff's lease, Tr. at 107, were due to expire on April 30, 2003, irrespective of defendant's actions with respect to the current RFP. When questioned about the termination of the lease at the TRO hearing, Mr. Lowry admitted that there was no guarantee that he could obtain an extension of the lease, even if the court granted injunctive relief requiring the BOP to extend plaintiff's CCC contract. Tr. at 107–08. Mr. Lowry stated that all he could do was "make every attempt I could to tie up the property for whatever period of time" the court might order the continuation of the incumbent contract. Tr. at 107–108. Issuing an injunction extending plaintiff's contract in these circumstances could be worse than an exercise in futility. An injunction would not only intrude upon defendant's decision-making process, but could also require defendant to enter into a contract with a party unable to perform.

### 2. Likelihood of Success on the Merits

To justify a TRO or preliminary injunction, a plaintiff must generally show a "reasonable probability" of success on the merits. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, § 2948.3; *A.L.K. Corp. v. Columbia Pictures Indus., Inc.*, 440 F.2d 761, 763 (3d Cir.1971). The degree of likelihood of success considered by itself is not determinative. Rather, the likelihood of success and irreparable harm factors are weighed in relation to each other. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, §§ 2948.3, 2951; *Duct–O–Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir.1994); *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir.1994).

Judicial review of agency procurement decisions is extremely limited. *Analytical & Research Tech., Inc. v. United States*, 39 Fed.Cl. 34, 42 (1997). A reviewing court cannot substitute its judgment for that of the agency, so if there is a reasonable basis for the agency's action, the court must uphold the agency's decision. *MCS Management, Inc. v. U.S.*, 48 Fed.Cl. 506, 510–511. A reasonable basis for the agency decision "requires a rational connection between the facts of the situation and the decision made." *Crux Computer Corp. v. United States*, 24 Cl.Ct. 223, 226 (1991). Further, because injunctive relief is so drastic, when plaintiff seeks this it must demonstrate its right to such relief by "clear and convincing evidence." *Bean Dredging Corp. v. United States*, 22 Cl.Ct. 519, 522 (1991). Here, plaintiff has alleged two bases for relief, bad faith by defendant in "purposely" delaying award in order to eliminate plaintiff from the competition, and breach of defendant's duty fairly and honestly to consider plaintiff's proposal. Compl. ¶ 14.

### a. Merits Evaluation: Bad Faith by the Contracting Authority in Delaying Award

It is well settled that government officials are presumed to act conscientiously and in

good faith in the discharge of their duties. *See, e.g., Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d 169, 173 (Fed.Cir.1986). To overcome this presumption, plaintiff must allege and prove specific acts of bad faith on the part of the government by clear and convincing evidence. *Am–Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed.Cir.2002). As the Federal Circuit has stated, "showing a government official acted in bad faith is intended to be very difficult, and that something stronger than a 'preponderance of the evidence' is necessary to overcome the presumption that he acted in good faith, i.e., properly." *Id.* Specifically, courts have required that evidence suggest that the government "had a specific intent to injure" plaintiff, that threats "were motivated alone by malice," that the government's actions were "part of a proven conspiracy ... to get rid of" plaintiff, or that the governmental conduct was "designedly oppressive" or "as actuated by animus" towards plaintiff. *Id.* at 1241 (internal citations omitted).

In this case, plaintiff has presented no admissible evidence of bad faith on the part of the government. Plaintiff's complaint alleges that Ms. Gina Mustain stated that "Bannum would never get another contract in the South Central Region." Compl. ¶ 14. At the time this statement was allegedly made, Ms. Mustain was Community Correction Regional Administrator for the Bureau of Prisons' South Central Regional Office. *See* Tr. at 124–133. Plaintiff presented the testimony of Mr. William L. Willingham, a former BOP official. Tr. at 117–18. The intended centerpiece of Mr. Willingham's testimony was his recollection of a telephone conference call in approximately January of 2000 in which Ms. Mustain's statement was allegedly made. Tr. at 124.

However, the statement was not entered into evidence because it was found to be hearsay. Tr. at 132–33. The court specifically found that the statement did not qualify as a party admission under Federal Rules of Evidence 801(d)(2)(C) and (D) because the alleged statement was not authorized by the government and did not fall within the scope of Ms. Mustain's employment. Tr. at 133. Specifically, the testimony elicited by plaintiff showed that Ms. Mustain was not a supervisor of anyone with authority to award the CCC contract under the RFP. Tr. at 129–131.[4] Any statement by Ms. Mustain "that Bannum would never get another contract in the South Central Region," TRO Mot. at 4, was outside Ms. Mustain's area of responsibility as an administrator in the BOP and could not provide "clear and convincing evidence" of bad faith in the contract award process. *See Am–Pro*, 281 F.3d at 1240.

b. Merits Evaluation: Duty Fairly and Honestly to Consider Plaintiff's Proposal

■ "The very essence of a bid protest is an allegation that the protestor's bid was not 'fairly and honestly' considered." *Forestry Surveys & Data v. United States*, 44 Fed.Cl. 485, 491 (1999). " 'The standards that permit a disappointed competitor to recover proposal preparation expenses are high and the burden of proof is heavy.' " *R.R. Donnelley & Sons, Co. v. United States*, 40 Fed.Cl. 277, 281 (1998) (quoting *E.W. Bliss Co. v. United States*, 77 F.3d 445, 447 (Fed.Cir.1996) (internal citations omitted)). To establish that defendant breached its implied-in-fact contract to treat its bid fairly and honestly, plaintiff must show that the government's actions were arbitrary and capricious. *See Concept Automation, Inc. v. United States*, 41 Fed. Cl. 361, 366–67 (1998). Plaintiff claims that the BOP violated this duty because it did not award the contract to Bannum immediately after the January 2003 submission of best and final offers. *See* Tr. at 89.

■ This court has articulated a four-part test to determine whether this implied duty

---

**4.** Q: Mr. Willingham, this statement was made by Ms. Mustang [sic]. What was Ms. Mustang's [sic] position at the time?

    A: She was the Community Corrections Regional Administrator for the South Central Region.

    . . . .

Q: Would she have supervisory authority over contracting officers?

    A: Over contracting officers?

    Q: Yes.

    A: No.

Tr. at 129.

was violated: "(1) presence or absence of bad faith by the government; (2) whether a reasonable basis exist for the government's decision; (3) the amount of discretion afforded the government official, and (4) the violation of a statute or regulation." *Concept Automation,* 41 Fed.Cl. at 367 (citing *Keco Indus. Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1204 (1974)). With respect to the first factor, the court has already decided that there is insufficient evidence to support a claim of bad faith on the part of the government. *See* Section II.B.2.a. *supra.* Nor has plaintiff presented any evidence of the absence of a reasonable basis for the government's decision. Plaintiff has also admitted that it knows of no statute or regulation that was violated. Tr. at 114. Mr. Lowry suggested in his testimony that some term of the RFP may have been violated, but pointed to no specific provision to support Bannum's claim. Tr. at 114–15.[5]

■ To bolster its argument that the BOP did not fairly and honestly consider its proposal, plaintiff sought to present telephonically the testimony of Mr. Donald Holt, the manager of Bannum's Beaumont facility, that through diligent search of public records he had been unable to find that putative competitors had obtained zoning rights in Beaumont that would support a CCC. Tr. at 138–40. *See* Fed.R.Evid. 803(10) (excepting from hearsay testimony concerning the absence of information from public records upon diligent search). According to plaintiff's proffer, Mr. Holt would testify as to the steps he took to determine that only Bannum was the only putative offeror having the requisite zoning approval in Beaumont from July 2002 until April 2003. Tr. at 96; 99. The court declined to hear this testimony because, even if it were true—which the court assumes for purposes of addressing this motion—it would not prove that the BOP had failed fairly and honestly to consider plaintiff's proposal. Nor does the court believe the amount of time it has taken for the BOP to make a contract decision, which Mr. Lowry thought was excessive, *see* Tr. at 88–90, requires the conclu-

sion that defendant has breached a duty to plaintiff. Plaintiff has not shown a likelihood of success on the basis of its evidence.

3. Balance of Harms

The court must balance the harm plaintiff would suffer without preliminary relief against the harm that preliminary relief would inflict on defendant. Generally, if the balance tips in favor of defendant, a TRO or preliminary injunction is not appropriate. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, §§ 2948.2, 2951.

There are well-recognized harms to the government's exercise of its statutory procurement authority involved in the issuance of the type of injunctive relief sought by plaintiff here. Courts have been virtually unanimous in declining to direct the award of contracts, believing that this decision is properly left to the discretion of the contracting agency. *See, e.g., Parcel 49C Ltd. P'ship v. United States,* 31 F.3d 1147, 1153 (Fed.Cir. 1994); *Scanwell Labs., Inc. v. Shaffer,* 424 F.2d 859, 869 (D.C.Cir.1970); *ManTech Telecoms. & Info. Sys. Corp. v. United States,* 49 Fed.Cl. 57, 79 (2001); *CCL Serv. Corp. v. United States,* 43 Fed.Cl. 680, 688 (1999).

The court also notes that any harm plaintiff will suffer here is significantly of its own making. Plaintiff has shown that best and final offers were due to the government on January 24, 2003. *See* Tr. at 73–75. It has also shown that as of that date, it had the proper zoning rights for its facility. *See id.* at 73. At that time, plaintiff knew it would lose its Pennsylvania Avenue facility lease and any related zoning rights on April 30, 2003. Not only did plaintiff not secure extended lease rights at its Pennsylvania Avenue facility prior to April 30, 2003, it waited until April 28, 2003, to bring a complaint to the court in this matter. *See* Compl. *passim.* This delay does not appear prudent. The court does not believe that a mandatory injunction should be used to fill in gaps in business planning. This court has recently noted that the regulations governing federal procurement "protect[ ] fair and open compe-

---

5. Mr. Lowry suggested that another party may have been able to change its proposal after best and final offers were submitted, Tr. at 115, but plaintiff presented no substantive evidence showing that this occurred.

tition, but ... do[ ] not wholly abandon an assumption of Darwinian principles." *Razorcom Tel. & Net., LLC v. United States,* 56 Fed.Cl. 140, 143–44 (2003).

#### 4. Public Interest

Finally, the court must consider whether a TRO or preliminary injunction in this case will further or injure the public interest. Plaintiff contends that "[i]t is beyond peradventure that the public has an interest in honest and open discretion in evaluating a contractor's bid." TRO Mot. at 9. The court agrees with the general proposition, but does not believe that the interest is served by interference in an ongoing procurement in the absence of a compelling reason to do so. There is no such compelling reason here.

Plaintiff additionally argues that "the public and CCC residents in Beaumont also have an interest in ensuring that CCC services are allowed to continue in the Beaumont area." *Id.* The "CCC residents[']" interests, that is, the interests of the charges of the Bureau of Prisons, do not appear to the court to have any status independent of the BOP in these circumstances. As to the "public" in Beaumont, the court will leave it to the appropriate zoning authorities and others to speak for themselves.

Plaintiff seeks either a directed award of a contract or an order to "maintain the status quo" by ordering the government, by purchase order, to extend plaintiff's tenure as a contractor. *See* Compl. ¶ 30. The court declines to do either. It is clearly in the public interest for there to be fair and open government contracting. The court's role in ensuring this fair and open government contracting is largely supervisory, however. Once the contracting process is complete, a court can review the procurement procedure and ensure there have been no irregularities that are prejudicial to plaintiff. It is not in the public interest, absent a compelling reason not present here, for the court to interject itself into an ongoing procurement process. Accordingly, the court finds that the public interest would best be served by declining to grant plaintiff's TRO Motion.

#### C. Legal Authority to Enter Injunction

Plaintiff argues that the injunctive relief sought here is authorized by the Administrative Procedure Act (APA), 5 U.S.C. § 706, and FAR § 6.302–2. Pl.'s Supp. at 2–4; *see* Compl. at 8 ("unusual and compelling urgency" justifies mandatory injunction to extend contract by purchase order). Plaintiff argues that both provisions express a directive to the court to enter an injunction in this procurement process. *See* Pl.'s Supp. at 2–4. The court finds that plaintiff's reliance on both provisions rests on mistaken assumptions.

As to the APA, plaintiff argues that, because the Tucker Act adopts the standard of review set out in 5 U.S.C. § 706, the reviewing court is also directed to "compel agency action unlawfully withheld or unreasonably delayed," as authorized by the text of the APA just preceding the standards. *Id.* at 2. The court disagrees. As an initial matter, plaintiff has identified no case in which this court has relied on § 706(1) to compel agency action when it has been faced with a bid protest action, and the court is aware of none. Further, the statutory language at issue does not support plaintiff's position.

The court's bid protest jurisdiction is governed by 28 U.S.C. § 1491(b)(2). Section 1491(b)(2) states that this court "may award any relief that the court considers proper, including declaratory and injunctive relief ...." 28 U.S.C. § 1491(b)(2). Section 1491 also governs the court's standard of review in bid protests, stating that this court "shall review the agency's decision pursuant to the standards set forth in section 706 of title 5." 28 U.S.C. § 1491(b)(4). Section 706 of title 5 contains two parts. The first part of § 706 is a grant of authority to the District court to take certain actions:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be
....

5 U.S.C. § 706. The second part of § 706 is a standard of review for "agency action, findings, and conclusions" upon which the actions authorized under § 706(2) may be taken:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.

It is clear that the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, 110 Stat. 3870 (ADRA), " 'applies the Administrative Procedure Act *standard of review* previously applied by the district courts ... to all procurement protest cases in the Court of Federal Claims.' " *Impresa*, 238 F.3d at 1332 (emphasis added) (quoting H.R. Conf. Rep. No. 104–841 at 10 (1996)). However, the actions authorized to be taken by this court after review upon those standards are "any relief that the court considers proper, including declaratory and injunctive relief ...." 28 U.S.C. § 1491(b)(2). The court views the "standards" to which § 1491(b)(4)

refers to be the text beginning with subsection (A) of § 706. The text of § 706 preceding subsection (A) is a grant of authority to take certain actions after review, rather than standards for a court to use in reviewing agency action.

Even if the terms of § 706(1) (the court "shall ... compel agency action unlawfully withheld or unreasonably delayed") were imported into this court's bid protest jurisdiction, plaintiff would not be entitled to the relief it seeks here.[6] Plaintiff has not shown that agency action was either "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. The only evidence on this point was that agency action, in the experience of the executive director of Bannum, generally takes place within two to four weeks after best and final offers are presented. Tr. at 89. This is insufficient to meet plaintiff's burden here.

Further, plaintiff's reliance on FAR § 6.302–2 is also misplaced. This section of the FAR allows agencies to limit the sources from which they solicit bids when there is "unusual and compelling urgency." FAR § 6.302–2. That limitation is for the benefit of the procuring agency and offers no support for directing an extension of plaintiff's contract by purchase order at the behest of the contractor.

### III. Government's Motion to Dismiss the Complaint

At the close of the TRO hearing, the government moved to dismiss plaintiff's complaint. Tr. at 156. The core of the government's argument on this point is that once injunctive relief is denied, there simply is no other remedy that can be awarded to plaintiff. *See* Tr. at 154–56. Therefore, the court

---

**6.** The court notes that the words "unlawfully withheld or unreasonably delayed" contained in subsection (1) of 5 U.S.C. § 706 could be viewed as part of the "standards" contained in § 706 to which the ADRA refers, although these "standards" are surely included within the concepts of "arbitrary, capricious [or] an abuse of discretion" enumerated in § 706(2)(A). There is no precedent of which this court is aware relying on § 706(1) to compel agency action in a bid protest case in this court. It has been suggested that this lack of precedent may be because most bid protest cases come to the court after an award has been made. *See generally W & D Ships Deck Works, Inc. v. United States,* 39 Fed.Cl. 638, 642 (1997). Nor is the court aware of any precedent under the *Scanwell* jurisdiction where § 706(1) was relied on to compel agency action in a bid protest context. Particularly in the absence of precedent under the *Scanwell* jurisdiction, it seems unlikely that the ADRA was intended to incorporate the mandatory provisions of § 706(1) within 28 U.S.C. § 1491(b).

should dismiss the complaint at this time. Tr. at 154–56.

Plaintiff argues that it is still entitled to bid preparation costs, and should be allowed to proceed with the case to prove those damages. Tr. at 148–49. Plaintiff cites to *Concept Automation* to support its contention that the court has jurisdiction over bid preparation costs, and accordingly argues that there is no reason for the court to dismiss the complaint at this time. Tr. at 151–52 (citing *Concept Automation,* 41 Fed.Cl. at 366).

Initially, the court notes that *Concept Automation* was a post-award bid protest, so it is of limited use in deciding the question of whether plaintiff can maintain its pre-award bid protest action here. 41 Fed.Cl. at 362. In addition, a review of pre-award cases where bid preparation costs were sought shows that a necessary, if unstated, precondition to the award of these costs is that plaintiff be a disappointed offeror. *See, e.g., E.W. Bliss Co. v. United States,* 77 F.3d 445 (Fed. Cir.1996); *Lion Raisins, Inc. v. United States,* 52 Fed.Cl. 629 (2002); *CW Gov't Travel v. United States,* 46 Fed.Cl. 554 (2000).

The court can foresee at least three possible resolutions to this procurement process: 1) plaintiff could be awarded the contract, 2) another vendor could be awarded the contract, or 3) the BOP could decide to cancel the solicitation. If plaintiff becomes a disappointed offeror because another vendor is awarded the contract or if the solicitation is cancelled, it could be entitled to bid preparation costs if it could show in those circumstances that the government action was illegal and that it was prejudiced by the illegality. *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir.1996). But if plaintiff were awarded the contract, the court cannot see how plaintiff could be entitled to bid preparation costs that are already built into the contract price that plaintiff proposed.

In these circumstances there is a question of whether plaintiff's claim is ripe for review. A claim is not ripe "if it is premised upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). If a claim is not ripe, the court does not have jurisdiction to hear the case, and it must be dismissed without prejudice. *Crawford v. United States,* 53 Fed.Cl. 191, 195 (2002).

Because plaintiff's possible entitlement to bid preparation costs cannot be determined until the conclusion of the procurement process, plaintiff's claim for the remaining relief sought under its complaint is not ripe at this time. "Without a [conclusion of the procurement], plaintiff's claim before this court is premature." *Id.* at 194. Plaintiff's complaint as to its claim for bid preparation costs should therefore be dismissed without prejudice.

## IV. Conclusion

For the foregoing reasons, the court DENIES plaintiff's motion for a temporary restraining order or preliminary injunction and its claims therefor are DISMISSED WITH PREJUDICE. In addition, plaintiff's complaint is DISMISSED WITHOUT PREJUDICE as to its claim for bid preparation costs. The parties shall bear their own costs.

IT IS SO ORDERED.