ALABAMA AIRCRAFT INDUSTRIES, INC.—BIRMINGHAM, Plaintiff,

v.

UNITED STATES, Defendant.

No. 08–470C.

United States Court of Federal Claims.

Filed Under Seal: Jan. 28, 2009.

Reissued: Feb. 3, 2009.

David R. Hazelton, Latham & Watkins LLP, Washington, D.C., for plaintiff. With him on the briefs were Roger S. Goldman, Kyle R. Jefcoat, Benjamin Wei, and Colleen Guilford, Latham & Watkins LLP, Washington D.C.

Douglas K. Mickle, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Gregory G. Katsas, Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel were Major Christopher L. McMahon, Air Force Legal Operations Agency, Arlington, Virginia and Kenneth C. Kitzmiller, Tinker Air Force Base Legal Office, Oklahoma City, Oklahoma.

## OPINION AND ORDER[1]

LETTOW, Judge.

Pending before the court is an application by plaintiff, Alabama Aircraft Industries, Inc.-Birmingham ("Alabama Aircraft"),[2] for an award of bid preparation and proposal costs pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(2), and the court's Opinion and Order entered on September 30, 2008. *See Alabama Aircraft Indus., Inc.-Birmingham v. United States,* 83 Fed.Cl. 666 (2008). In the prior decision, the court enjoined the Air Force from proceeding with a contract to perform maintenance and install modifications on the Air Force's KC–135 Stratotanker fleet. *Id.* at 703. The injunction required the Air Force to "resolicit the procurement and take the necessary steps in a new solicitation to address explicitly the role of an ever-aging KC–135 fleet on the [maintenance] to be performed." *Id.* The court also awarded Alabama Aircraft "its reasonable costs incurred in bid preparation and proposal." *Id.* The government has now disputed Alabama Aircraft's right to any award of reasonable costs and, alternatively, specific elements of Alabama Aircraft's claimed amounts.[3]

---

1. Because this opinion and order might have contained confidential or proprietary information within the meaning of Rule 26(c)(7) of the Rules of the Court of Federal Claims ("RCFC") and the protective order entered in this case, it was initially filed under seal. The parties were requested to review this decision and to provide proposed redactions of any confidential or proprietary information on or before February 2, 2009. One set of redactions was requested, and accordingly the opinion is being reissued with only one change. Redactions are shown by asterisks enclosed by brackets, as follows: "[* * *]."

2. Alabama Aircraft was previously named Pemco Aeroplex, Inc. until it changed its name in 2007 in conjunction with a corporate restructuring. *See Alabama Aircraft,* 83 Fed.Cl. at 681–82.

3. The court's award of injunctive relief was accompanied by a direction to the clerk to enter final judgment as to such relief under RCFC 54(b). *See Alabama Aircraft,* 83 Fed.Cl. at 703.

Alabama Aircraft requests that this court award it $2,146,361.91 in bid preparation and proposal costs. Pl.'s Reply in Support of Its Application for Bid Preparation and Proposal Costs at 1 ("Pl.'s Reply"). The government asserts two different rationales for precluding Alabama Aircraft from recovering any of its costs. First, the government claims that awarding Alabama Aircraft bid preparation and proposal costs in addition to injunctive relief would result in plaintiff receiving an impermissible double recovery. *See* Def.'s Resp. and Opp'n to Pl.'s Application for Bid Preparation and Proposal Costs at 6 ("Def.'s Resp."). Secondly, the government contends that Alabama Aircraft has failed properly to substantiate its request for bid preparation and proposal costs. Def.'s Resp. at 12.

## BACKGROUND

Alabama Aircraft filed its complaint in this court on June 27, 2008. *Alabama Aircraft*, 83 Fed.Cl. at 679. It asserted that the Air Force's award to Boeing Aerospace Operations ("Boeing") of a contract to perform Programmed Depot Maintenance ("PDM"), Unscheduled Depot Level Maintenance ("UDLM"), and modification installations for the Air Force's KC–135 Stratotanker fleet was arbitrary, capricious, and contrary to law. *See* Compl. ¶¶ 1, 5. The bid protest filed by Alabama Aircraft arose out of a Request for Proposal ("RFP") circulated by the Air Force in August 2005. *Alabama Aircraft*, 83 Fed.Cl. at 670. Initially, Boeing and Alabama Aircraft submitted a joint proposal under the RFP, with Boeing serving as the prime contractor and Alabama Aircraft as its primary subcontractor. *Id.* at 671. Due to an amendment to the RFP, which changed the number of KC–135s that would require contractor PDM, Boeing decided to terminate its partnership with Alabama Aircraft in June 2006. *Id.* In an effort to guarantee its ability to compete for the KC–135 maintenance contract, Alabama Aircraft initiated an agency level protest. *Id.* In response to Alabama Aircraft's protest, the Air Force amended the RFP to allow for the submission of new proposals, and Alabama Aircraft commenced work on its proposal. *Id.*

In September 2006, the Air Force received proposals from Boeing, Alabama Aircraft, and Lockheed Martin, and it requested that the three offerors submit final proposals by June 2007. *Alabama Aircraft*, 83 Fed.Cl. at 671. All three of the offerors submitted final proposals in accordance with the Air Force's proposed schedule. *Id.* After reviewing the final proposals, the Air Force determined that either Boeing or Alabama Aircraft would be awarded the contract. *See id.* at 675. The Air Force's evaluation of the competing offers revealed "that Boeing's proposal offered the lowest total evaluated price and superior supply chain management, while Alabama Aircraft's proposal had a better past performance record." *Id.* Ultimately, the Air Force decided to award the contract to Boeing, and Alabama Aircraft filed a protest with the Government Accountability Office ("GAO"), challenging the award to Boeing on several grounds. *Id.* at 676. In a written decision issued on December 27, 2007, GAO sustained Alabama Aircraft's protest because it concluded "that the Air Force's price evaluation was flawed" and that the Air Force had failed "to consider the risk created by Boeing's reduction in projected labor hours." *Id.* After the GAO rejected a request by the Air Force for reconsideration, the government sought to take "limited corrective action" by conducting a price realism analysis using information contained in Boeing's June 2007 final proposal. *Id.* at 676–77. Thereafter, the Air Force informed the competitors that "it had affirmed the award of the KC–135 PDM contract to Boeing." *Id.* at 677.

Alabama Aircraft then filed a second protest at GAO, raising several objections to the Air Force's award of the KC–135 PDM contract to Boeing, most notably to the failure of the Air Force to obtain and analyze information that was necessary to determining the viability of Boeing's proposal given the aging of the KC–135 fleet. *Alabama Aircraft*, 83

---

Judgment respecting injunctive relief was entered on September 30, 2008, in accord with the court's direction.

Fed.Cl. at 678. GAO rejected all of Alabama Aircraft's contentions. *Id.* at 678–79.

At that juncture, Alabama Aircraft filed a complaint in this court, and the court implemented an accelerated schedule for submitting the administrative record and cross-motions for judgment on that record in accordance with RCFC 52.1. *Alabama Aircraft*, 83 Fed.Cl. at 679. Those proceedings produced the decision granting partial injunctive relief and awarding bid preparation and proposal costs. *Id.* at 703.

## STANDARDS FOR DECISION

Under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub.L. No. 104–320, § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), a disappointed offeror who prevails in a bid protest can receive "any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2). In its prior ruling, the court found that a reprocurement was necessary and that Alabama Aircraft was entitled to bid preparation and proposal costs "because of the lengthy process involved with the procurement and the government's failure ever to clarify the aging-aircraft issue in the [Request for Proposals] and amendments to it." *Alabama Aircraft*, 83 Fed.Cl. at 703. The Tucker Act as amended by the ADRA does not define "bid preparation and proposal costs." *See* 28 U.S.C. § 1491(b)(2).

Such costs are defined in the Federal Acquisition Regulations ("FAR"), which states that bid preparation and proposal costs are those "costs incurred in preparing, submitting, and supporting bids and proposals (whether or not solicited) on potential [g]overnment or non-[g]overnment contracts." 48 C.F.R. § 31.205–18(a). Bid preparation and

proposal costs must be both reasonable and allocable to be recoverable. 48 C.F.R. § 31.205–18(c); *see Coflexip & Servs., Inc. v. United States,* 961 F.2d 951, 953 (Fed.Cir. 1992) (reviewing provisions in a regulation, subsequently repealed, that were identical to those of the current FAR). A claimed cost is considered reasonable "if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business." 48 C.F.R. § 31.201–3(a). Bid preparation and proposal costs are treated as allocable when they are "incurred specifically for the contract." 48 C.F.R. § 31.201–4(a). "Expenses compensable as bid preparation costs are those in the nature of researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids." *Lion Raisins v. United States,* 52 Fed.Cl. 629, 631 (2002) (citations omitted). The plaintiff bears the burden of proving that it is entitled to be reimbursed for its bid preparation and proposal costs. *Geo–Seis Helicopters, Inc. v. United States,* 79 Fed.Cl. 74, 80 (2007). Both parties accept and adopt this framework for evaluating an application for bid preparation and proposal costs. *See, e.g.,* Pl.'s Application for Bid Preparation and Proposal Costs ("Pl.'s Application") at 2; Def.'s Resp. at 11–12.[4]

## ANALYSIS

The amount Alabama Aircraft seeks to recover in bid preparation and proposal costs, $2,146,361.91, is approximately .18% of the total evaluated price of the final proposal it submitted to the Air Force. Pl.'s Application at 2. Alabama Aircraft specifically seeks to recover $1,343,569.77 for internal labor costs, Pl.'s Application at 3; Pl.'s Reply at 1 n. 1, $88,201.42 in internal expenses, Pl.'s Application at 4, and $714,590.72 for "fees and expenses paid to consultants for their work on the KC–135 proposal," Pl.'s Applica-

---

4. One judge on this court has stated that "the FAR explanations of 'reasonableness,' ..., and 'allocability,' ..., [provide] useful guidance in determining the proper size of an award of bid preparation and proposal costs, but ... these provisions are not authoritative" in calculating plaintiff's entitlement to bid preparation and proposal costs. *Beta Analytics Int'l, Inc. v. United States,* 75 Fed.Cl. 155, 160 (2007) (internal cita-

tions omitted). *Beta Analytics* emphasized the discretion that the Tucker Act gives this court in fashioning relief in bid protest cases. *Id.* (citing 28 U.S.C. § 1491(b)(2)). Although there is a *statutory* gap in determining what qualifies as reimbursable bid preparation and proposal costs, other judges have filled this gap by importing the relevant provisions of the FAR cited previously in the text.

tion at 4. To preclude Alabama Aircraft from receiving bid preparation and proposal costs, the government first contends that an award of bid preparation and proposal costs in addition to the injunctive relief already awarded to Alabama Aircraft is impermissible because "an award of bid preparation costs remains an *alternative* remedy to equitable relief." Def.'s Resp. at 8 (emphasis in original). Additionally, the government questions particular elements of Alabama Aircraft's claimed costs. Def.'s Resp. at 12.

### A. Permissibility of Awarding Both Injunctive Relief and Bid Preparation and Proposal Costs

In arguing that this court cannot "award both full injunctive relief and bid preparation and proposal costs," Def.'s Resp. at 6, the government looks chiefly to the law as it existed prior to the modification of the Tucker Act by the ADRA. Under that law, the government contends that "a successful protestor could receive either equitable or monetary relief, but not both." Def.'s Resp. at 6–7. The government maintains that the ADRA of 1996 was not intended "to alter the remedies available to a successful protester." Def.'s Resp. at 7. Additionally, the government argues that if the court has the ability to grant both injunctive and monetary relief, it should not do so in the instant case because allowing Alabama Aircraft to recover bid preparation and proposal costs would violate the principle that a remedy should not put a plaintiff "in a better position than if no breach had occurred." Def.'s Resp. at 11.[5]

The government errs in stating the legal principles underpinning its arguments. By enacting 28 § U.S.C. 1491(b)(2) as part of the ADRA, Congress specifically empowered the court to exercise discretion in fashioning equitable relief and monetary relief consisting of bid preparation and proposal costs. *See* 28 U.S.C. § 1491(b)(2) ("[T]he court[ ] may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.").

■ "In cases of statutory interpretation, courts first examine the plain meaning of the statute, and, if it is unambiguous, enforce that meaning." *America Online v. United States*, 64 Fed.Cl. 571, 577 (2005) (citing *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). Invoking this bedrock principle of statutory construction, the Federal Circuit has emphasized that "the language of 28 U.S.C. § 1491(b)(2), . . . provides the Court of Federal Claims with discretion in fashioning relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1226 (Fed.Cir.2004). Specifically, the plain language of 28 U.S.C. § 1491(b)(2) *grants*, rather than withholds, discretion to this court to award both injunctive relief and bid preparation and proposal costs. In short, the text of 28 U.S.C. § 1491(b)(2) offers no support for the government's proffered limitation on the court's ability to afford relief in bid protest cases.

**5.** In its reply brief, Alabama Aircraft contends that "[t]he Air Force waived its opportunity to challenge the [c]ourt's authority to award both an injunction and [bid preparation and proposal] [c]osts by failing to raise the issue during the [c]ourt's consideration of the merits of the case." Pl.'s Reply at 7. Alabama Aircraft argues that "[t]he current proceeding is merely an adjudication of the proper quantum of relief—not the propriety of the relief already awarded." *Id.* at 7 n. 3. The government was granted leave to file a sur-reply and responded that at the prior stage of this litigation, all parties were focused upon whether injunctive relief was due, not whether bid preparation and proposal costs could also be awarded. Def.'s Sur–Reply at 2. The government has the better part of this argument. In its complaint, Alabama Aircraft sought bid preparation and proposal costs in addition to equitable relief, Compl., Prayer for Relief ¶ E, but such costs were not specifically put at issue during the briefing and argument about injunctive matters.

In a related vein, Alabama Aircraft urges that the government's challenge to an award of injunctive relief and bid preparation and proposal costs should have been raised in a motion for reconsideration of the court's judgment and that such a motion had to be filed within ten days after the judgment issued on September 30, 2008. Pl.'s Reply at 9 (citing RCFC 59(e)). This contention is also unavailing because the prior judgment was entered pursuant to RCFC 54(b) and related only to injunctive matters. *See Alabama Aircraft*, 83 Fed.Cl. at 703; Judgment, Docket No. 115 (Sept. 30, 2008). Thus, no final judgment was issued regarding bid preparation and proposal costs, and, indeed, the court's prior decision set a schedule for subsequent consideration of such costs. *Alabama Aircraft*, 83 Fed.Cl. at 703.

Sidestepping the text of the statute, the government seeks to support its theory of limited remedial power by cobbling together an incomplete history of the development of bid protest jurisprudence and relying on out-of-context statements from case law. Initially, this court's power to adjudicate bid protest claims arose from the fiction that the government had an implied contract with an offeror "to honestly consider" its proposal. *Heyer Prods. Co. v. United States*, 135 Ct.Cl. 63, 140 F.Supp. 409, 413–14 (1956); *see also Keco Indus., Inc. v. United States*, 192 Ct.Cl. 773, 428 F.2d 1233, 1236 (1970). Before the Federal Courts Improvement Act of 1982 was enacted, this court lacked the ability to provide bid protest plaintiffs with declaratory or injunctive relief. *See Emery Worldwide Airlines, Inc., v. United States*, 264 F.3d 1071, 1078 (Fed.Cir.2001). In bid protest cases, this court generally focused on relief in terms of an award of bid preparation and proposal costs. *See, e.g., Keco Indus., Inc. v. United States*, 203 Ct.Cl. 566, 492 F.2d 1200, 1203 (1974); *Finley v. United States*, 31 Fed. Cl. 704, 707 (1994). Precedents conclusively established that a disappointed offeror did not have a right to recover *lost profits* from the government in a bid protest. *See Heyer Prods.*, 140 F.Supp. at 412 ("[A]n unsuccessful bidder cannot recover the profit he would have made out of the contract, because he had no contract."). The 1982 Act amended the Tucker Act to add an authorization for this court to award equitable relief in pre-award bid protests. *See United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1364 (Fed.Cir.1983) (en banc).[6] Accordingly, during the ensuing era, this court had jurisdiction only to award equitable relief in pre-award bid protests. *See id.* at 1372 (concluding that the equitable power of the Claims Court in a bid protest case could be invoked only by filing a claim with the court before a contract was awarded). The ability to grant equitable relief for post-award bid post protests resided solely with the district courts, *see Cincinnati Elecs. Corp. v. Kleppe*, 509

F.2d 1080, 1089 (6th Cir.1975), although bid preparation and proposal costs related to post-award protests could be recovered in this court. *Id.* (citing *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1302 (D.C.Cir.1971); *Keco Indus.*, 428 F.2d at 1240; *Robert F. Simmons & Assocs. v. United States*, 175 Ct.Cl. 510, 360 F.2d 962, 964 (1966); *Heyer Prods. Co. v. United States*, 177 F.Supp. 251, 252 (1959)). Later cases determined that this court had "jurisdiction to grant bid *protest* costs as well as bid preparation costs." *Crux Computer Corp. v. United States*, 24 Cl.Ct. 223, 226 (1991) (emphasis added); *see also Concept Automation, Inc. v. United States*, 41 Fed.Cl. 361, 364–66, 370 (1998); *Finley*, 31 Fed.Cl. at 707. Thus, as Alabama Aircraft correctly notes, this court's earlier inability to grant both post-award injunctive relief and monetary damages "was jurisdictional and not an indication that an award of injunctive relief and [monetary relief in terms of] [c]osts is not permissible." Pl.'s Reply at 3 n. 2.

In 1996, the ADRA changed the law by providing that "[b]oth the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded." 28 U.S.C. § 1491(b)(1). The ADRA also contained a sunset provision, which provided that after January 1, 2001 the Court of Federal Claims would be the exclusive judicial tribunal to adjudicate bid protest claims. Pub.L. No. 104–320, § 12(d), 110 Stat. 3870, 3875 (1996). The effect of the ADRA was "to confer the Court of Federal Claims with the same power in bid protest actions that the district courts exercised under the APA." *See Lion Raisins, Inc. v. United States*, 52 Fed.Cl. 115, 119 (2002). The Federal Circuit has stated that by enacting the ADRA Congress did not "intend[ ] to eliminate the Court of Federal Claims' discretion in deciding whether to issue injunctive relief." *PGBA*, 389 F.3d at 1227.

---

**6.** The relevant provision was then codified as 28 U.S.C. § 1491(a)(3), now supplanted by amendments to the statute, and specified that "[t]o afford complete relief on any contract claim brought before the contract is awarded, the court

shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief."

The government's reliance on the statement in the *Lion Raisins* decision that "nothing [in] the ADRA's statutory language or its legislative history suggests Congress intended to change dramatically the relief available in bid protest actions" is misplaced. Def.'s Resp. at 7 (quoting *Lion Raisins,* 52 Fed.Cl. at 119–20). In *Lion Raisins,* the court was addressing the ability of a disappointed bidder to recover lost profits, which have never been recoverable in a bid protest claim. *See id.* The *Lion Raisins* court did not address whether this court in a bid protest could appropriately award both injunctive and monetary relief. As the later bid-preparation decision in *Lion Raisins* pointed out, by enacting 28 U.S.C. § 1491(b)(2) as part of the ADRA, Congress removed the power of this court to award bid *protest* costs, *see* 52 Fed.Cl. at 631, but otherwise the court was granted discretion in fashioning equitable relief and monetary relief consisting of bid preparation and proposal costs. In that respect, in recent years judges of this court have awarded both injunctive and monetary relief in a number of prior cases, where such relief was appropriate. *See CNA Corp. v. United States,* 83 Fed.Cl. 1, 10–11 (2008) (collecting cases that "have awarded complete, permanent injunctive relief along with bid preparation and proposal costs"). Early bid protest case law does not govern this practice; rather, the provisions of 28 U.S.C. § 1491(b)(2), added by the ADRA, establish the legal framework for such awards.[7]

In support of its argument that an award of bid preparation and proposal costs in addition to the injunctive relief awarded to Alabama Aircraft would result in an impermissible double recovery, the government cites to decisions in *Beta Analytics,* 75 Fed.Cl. at 160, and *Bannum, Inc. v. United States,* 56 Fed.Cl. 453 (2003). However, those decisions are not supportive of the government's position.

In *Beta Analytics,* the court ordered equitable relief that called upon the government to institute a new procurement to replace a contract that had been improperly awarded. 75 Fed.Cl. at 157. In that respect, the decision addresses circumstances comparable to the situation in this action. However, the portions of the decision quoted by the government relate to the court's discussion of the different situation that arises where "injunctive relief [is] crafted to provide for the reevaluation of the submitted proposals." *Beta Analytics,* 75 Fed.Cl. at 159 (citing *University Research Co. v. United States,* 65 Fed.Cl. 500, 512–15 (2005); *Hawaiian Dredging Constr. Co. v. United States,* 59 Fed.Cl. 305, 316–18 (2004); and *Informatics Corp. v. United States,* 40 Fed.Cl. 508, 519 (1998)); *see* Def.'s Resp. at 8. The government is correct that when the court mandates a reevaluation of submitted proposals as a remedy, an award of bid preparation and proposal costs would often be a duplicative remedy because the prevailing party's proposal would still be viable. However, in this case, the court required the government to resolicit the KC–135 PDM contract. Thus, it is not appropriate for the government to rely on statements from *Beta Analytics* drawing a contrast to equitable relief that orders a reevaluation of submitted proposals, which alleviates a need to award bid preparation and proposal costs. Indeed, the court in *Beta Analytics* differentiated that milder form of relief from injunctive relief that called for a new procurement, as to which an award of bid preparation and proposal costs *was* deemed appropriate in addition to equitable relief. *See* 75 Fed.Cl. at 159. *Beta Analytics* thus supports Alabama Aircraft's

---

**7.** Several of the earliest bid protest precedents viewed the prospect of monetary relief as a barrier to an award of injunctive relief. *See, e.g., Cincinnati Elecs.,* 509 F.2d at 1089; *M. Steinthal & Co.,* 455 F.2d at 1302. Thus, the failure of early cases to award both injunctive relief and bid preparation and proposal costs stemmed from the fact that courts viewed the available monetary relief as "an adequate remedy" at law, which could lead a court to decline to exercise its equitable power, and not from an inability to grant both types of relief in a bid protest action. *See Cincinnati Elecs.,* 509 F.2d at 1089. Later, as bid protest jurisprudence developed, courts determined that the availability of bid preparation and proposal costs was not an adequate remedy at law. *Seattle Sec. Servs., Inc. v. United States,* 45 Fed.Cl. 560, 571 (2000) (stating that "a lost opportunity to compete on a level playing field for a contract … has been found sufficient to prove irreparable harm").

position and not the government's arguments in this case.

The facts in *Bannum* render that precedent readily distinguishable from the circumstances of this case. At the time Bannum filed its protest, the government had yet to decide which offeror would be awarded the contract. 56 Fed.Cl. at 455. *Bannum* was thus a pre-award bid protest action, and the court correctly noted that plaintiff's request for bid preparation and proposal costs was premature because "a necessary, if unstated, precondition to the award of [bid preparation and proposal] costs is that plaintiff be a disappointed offeror." *Id.* at 462 (citations omitted). Bannum's original proposal was still pending with the government, and the bid preparation and proposal costs it expended in drafting that proposal were not needless expenses since Bannum still had an opportunity to win the contract with its original proposal. *Id.* Here, in contrast, the court directed the Air Force to resolicit the award of the KC–135 PDM contract, and thus Alabama Aircraft must submit a new proposal. *Alabama Aircraft*, 83 Fed.Cl. at 703. Because of the lengthy time delay between when Alabama Aircraft submitted its original final proposal and when it would be required to submit a new proposal under the resolicitation, combined with the fact that the Air Force will have to make substantial changes in the RFP, Alabama Aircraft's prior proposal will be of limited utility in formulating any new proposal it may submit. Therefore, it would not amount to an impermissible double recovery for Alabama Aircraft to receive bid preparation and proposal costs in addition to the injunctive relief the court previously awarded.

The foremost principle in fashioning a remedy is to endeavor to place the plaintiff in the position he or she would have occupied but for defendant's wrong. *See, e.g., Glendale Federal Bank, FSB v. United States*, 239 F.3d 1374, 1380 (Fed.Cir.2001). In this case, an award of bid preparation and proposal costs is necessary to place Alabama Aircraft in its rightful position. Here, without defendant's errors, Alabama Aircraft would have had to submit only one proposal. Due to those errors, Alabama Aircraft is now required to pay for and submit another proposal in a continuing effort to obtain an award of a contract for maintenance work on the KC–135 PDM Stratotanker. An award of bid preparation and proposed costs is fully appropriate to provide a complete remedy for Alabama Aircraft.

## B. *Claimed Costs*

In determining whether particular claimed costs are recoverable as bid preparation and proposal costs, the court examines whether the amounts sought are competitively reasonable and allocable specifically to the contract that was at issue. *See Coflexip*, 961 F.2d at 953–54.

### 1. *Labor costs.*

Alabama Aircraft seeks to recover $1,343,569.77 it expended in labor costs in preparing its bid proposal for KC–135 PDM contract. Pl.'s Application at 3; Pl.'s Reply at 1 n. 1. The declaration of Randall Shealy, Chief Financial Officer and Treasurer of Alabama Aircraft, explains how the company calculated its labor costs. Decl. of Randy Shealy at 3 (Oct. 28, 2008) ("Shealy Decl."). As the government notes, the exhibits attached to support and document Alabama Aircraft's labor costs are not "contemporaneous records of actual hours worked or costs actually incurred in this project." Def.'s Resp. at 14. Due to the failure of Alabama Aircraft to submit contemporaneous records substantiating its request for bid preparation and proposal costs, the government requested that the Defense Contract Audit Agency ("DCAA") audit Alabama Aircraft's application. *Id.* Alabama Aircraft asserts that the results of the Air Force's audit should not be determinative in deciding whether it is entitled to bid preparation and proposal costs because the DCAA treated its claimed costs as a request for a price adjustment, requiring it to produce contemporaneous documentation that is not needed to support an application for bid preparation and proposal costs. Pl.'s Reply at 10–11.

In an effort to calculate the labor costs incurred in formulating Alabama Aircraft's proposal, Tim Walker, who oversaw the development of Alabama Aircraft's KC–135 PDM proposal, formulated "a list of current

and former employees of Alabama Aircraft who assisted in the preparation of [its] proposal." Shealy Decl. at 1–2. Each of the employees identified was requested to review their records and identify how many hours they spent working on the development of Alabama Aircraft's proposal. *Id.* at 2. The chief financial officer and his staff then proceeded to calculate the average unburdened labor rate for each employee by dividing the employee's salary during the time Alabama Aircraft worked on its proposal by the amount of hours that a full-time employee was expected to work during that time period. *Id.* In determining its total labor costs, Alabama Aircraft applied a burdened rate of [* * *] for 2005, [* * *] for 2006, and [* * *] for 2007. *Id.* at 3. In calculating its burdened labor rate, Alabama Aircraft added "a fringe rate" to account for expenses such as federal and state payroll taxes, workers compensation, retirement benefits, and health, vision, and dental insurance. *See, e.g., id.* at 2–3 & Ex. C (Fringe Rate (Oct. 28, 2008)). This court has repeatedly found that labor burden and fringe benefits are allowable labor-cost elements. *See, e.g., Geo–Seis,* 79 Fed.Cl. at 80; *Lion Raisins,* 52 Fed.Cl. at 634 ("[O]verhead costs, including workers compensation and fringe benefits, have been awarded as bid preparation costs when shown to be reasonable and allocable to the contract.").

The government claims that this court should not rely on the Shealy Declaration to support plaintiff's application for bid preparation and proposal costs because Alabama Aircraft failed to submit sufficient contemporaneous evidence to substantiate its claimed labor costs. Def.'s Resp. at 14–15. The government's challenge is unavailing. It is well established in this court that a disappointed offeror is not required to submit contemporaneous records to support its award of bid preparation and proposal costs. *See Geo–Seis,* 79 Fed.Cl. at 80; *Impresa Construzioni Geom. Domenico Garufi v. United States,* 61 Fed.Cl. 175, 183 (2004). However, this principle does not relieve a plaintiff of its burden to produce evidence to show the court that it is entitled to recover its claimed costs. Here, Alabama Aircraft has provided detailed descriptions of the

tasks performed by its employees, *see* Pl.'s Reply, Attach. 2 (Decl. of Timothy Walker (Nov. 18, 2008) ("Walker Decl.") Ex. A), and provided a precise and concise explanation of how it calculated its costs. *See* Shealy Decl. at 1–3.

The government further asserts that Fed. R.Evid. 1006 "precludes the [c]ourt from considering the labor costs claimed in Alabama Aircraft's application" because Alabama Aircraft did not produce the originals or duplicates of the documents used to generate the summaries. Def.'s Resp. at 15–16. In this respect, the government principally objects to the summary of labor cost calculations appended to the Shealy Declaration as Exhibit B. Alabama Aircraft responds that the government's argument concerning Fed. R.Evid. 1006 "mischaracterizes the nature of the evidence submitted by Alabama Aircraft" because its proffered exhibits and declarations are "not summaries of other evidence, but rather evidence in and of themselves," and thus that Fed.R.Evid. 1006 is inapplicable. Pl.'s Reply at 18.

■ Fed.R.Evid. 1006 provides that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place." The Court of Appeals for the First Circuit has stated that "[c]harts admitted under Rule 1006 are explicitly intended to reflect the contents of the documents they summarize and typically are substitutes in evidence for the voluminous originals." *United States v. Milkiewicz,* 470 F.3d 390, 398 (1st Cir.2006). Evidence that a party wishes to introduce under Fed.R.Evid. 1006 must satisfy the other applicable rules of evidence as well as the requirements of Rule 1006. *See* 31 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 8043, at 521–22 (2000). For a summary to be admissible under Fed.R.Evid. 1006, a party need not have introduced the originals on which the summary is based into evidence. *United States v. Janati,* 374 F.3d 263, 272–73

(4th Cir.2004); *Bannum, Inc. v. United States,* 59 Fed.Cl. 241, 245 (2003).

The summary of labor costs prepared by Mr. Shealy and attached as Exhibit B to his declaration is not subject to the requirements of Fed.R.Evid. 1006. The government's main objection to Exhibit B centers on the hours-worked component of the chart, namely that Mr. Shealy lists the number of hours each employee worked on its bid proposal but detailed time records are not available for each employee who worked on the KC–135 proposal. Def.'s Resp. at 14. Alabama Aircraft asserts that the government's argument is misplaced because it overlooks the fact that Exhibit B is not a summary of time records. Pl.'s Reply at 18. It is axiomatic that for Fed.R.Evid. 1006 to be implicated original documents must be summarized. That is not what Alabama Aircraft did. Because Alabama Aircraft did not maintain contemporaneous records of the time each employee spent working on its KC–135 PDM proposal, Alabama Aircraft was forced to recreate the time each employee worked on the proposal through indirect means, *i.e.,* examining records of communication and the schedule for the solicitation. *See, e.g.,* Pl's Reply at 18; Shealy Decl. at 1–2. In short, Fed.R.Evid. 1006 does not pertain to the listing Mr. Shealy prepared with the assistance of other Alabama Aircraft employees.

In contrast, Exhibit C to Mr. Shealy's declaration is "based upon Alabama Aircraft's actual non-salary fringe labor expenses for each year as they appear in Alabama Aircraft's general ledger." Shealy Decl. at 3. Unlike Exhibit B, Exhibit C distilled hundreds of preexisting pages of financial records and documents pertaining to the company's burdened labor costs over a three-year period. Thus, Exhibit C to Alabama Aircraft's application for bid preparation and proposal costs is a summary that falls within the purview of Fed.R.Evid. 1006. However, Alabama Aircraft in actuality provided the government an opportunity to examine the underlying records because it allowed the DCAA to examine Alabama Aircraft's claimed costs. DCAA carried out such an examination, although it mistakenly treated Alabama Aircraft's claimed bid preparation and proposal costs as a "price adjustment claim" for which a specific accounting category had to be established to accumulate costs and charges. Def.'s Resp. Attach. (DCAA Audit Report No. 1201–1009G17200001 ("DCAA Report")) at 2. As a consequence, DCAA "questioned the claimed fully burdened labor in its entirety." *Id.* Notably, in an earlier audit dated August 17, 2007, DCAA had found Alabama Aircraft's "accounting system to be adequate for accumulating costs on [g]overnment contracts." *Id.* at 3. Nothing in the most recent examination changed that conclusion, apart from DCAA's mistaken comments treating a request for bid preparation and proposal costs as if it were a price-adjustment claim for which a separate, specific accounting category had to be established. In all events, DCAA had an opportunity to examine Alabama Aircraft's general ledger for non-salary labor expenses. Thus, the requirements of Fed.R.Evid. 1006 were satisfied, contrary to the government's claim, and the labor-burden summaries contained in Exhibit C can be considered by the court in determining Alabama Aircraft's entitlement to bid preparation and proposal costs.

Specifically, Alabama Aircraft seeks to recover $491,774.62 in burdened labor costs for 2005, $561,907.41 in costs for 2006, and $289,877.31 in costs for 2007. Pl.'s Application, Shealy Decl. Ex. B (Total Labor Costs); Walker Decl. at 3. Alabama Aircraft asserts that it began to work on the KC–135 PDM contract "in the second half of 2005," when it was a subcontractor on Boeing's proposal, "and ended in the first half of 2007." Shealy Decl. at 2. Despite working as a subcontractor for Boeing, Alabama Aircraft contends that it "was responsible for preparing substantial portions of the ... joint proposal." Walker Decl. at 2.

The government asserts that Alabama Aircraft is precluded from recovering any labor costs it sustained while serving as a subcontractor on Boeing's proposal. Def.'s Resp. at 16. While Alabama Aircraft was serving as a subcontractor to Boeing, it "did not contemplate submitting an offer in its own right." *Id.* at 17. Only when Boeing terminated its partnership with Alabama Aircraft, in re-

sponse to the Air Force's amending the RFP in June 2006 to reflect that a reduced number of KC–135s would need to have PDM performed by an outside contractor, did Alabama Aircraft consider submitting its own individual proposal. *Id.* (citing Administrative Record Tab 46.15A–54). In response to a protest filed with the Air Force by Alabama Aircraft, the Air Force decided to reopen the solicitation. *Id.* The government claims that the reopening of the solicitation in July 2006 marked "essentially the start of a new competition to address a new requirement." *Id.*

■ Alabama Aircraft does not challenge the government's description of events that led up to the reopening of the procurement, but it does contest the government's assertion that reopening the procurement marked the start of a new competition. Pl.'s Reply at 12. In support of its position, Alabama Aircraft relies on the fact that the same underlying type of work was involved and the same evaluation procedures were to be used in analyzing the offerors' proposals. *Id.* According to Alabama Aircraft, its work as a subcontractor for Boeing "served as a foundation for [its] independent proposal." Walker Decl. at 2. Thus, Alabama Aircraft claims it is entitled to recover the costs of its work as a subcontractor on a joint proposal with Boeing because that work was "incorporated into Alabama Aircraft's proposal and the costs associated with these efforts would not have been incurred in the absence of the competition." Pl.'s Reply at 13.

■ If plaintiff seeks to recover a cost that it sustained prior to working on its own proposal, the allocability requirement obligates the disappointed bidder to demonstrate that "the claimed cost[ ] [was] incurred in anticipation of competing for the specific contract at issue." *Tri Tool, Inc.*, B–265649, 1997 WL 561351, at *2 (Comp.Gen. Sept.9, 1997). Alabama Aircraft is unable to demonstrate that the costs it sustained prior to the termination of its partnership with Boeing were incurred in anticipation of submitting its own KC–135 bid proposal. Prior to June 2006, Alabama Aircraft functioned as a subcontractor for Boeing and had no intention of competing independently for the KC–135

PDM contract. Only when its partnership with Boeing was terminated in June 2006 did Alabama Aircraft seek to compete directly on its own behalf for the KC–135 PDM contract. Alabama Aircraft's averment that the claimed costs were "incurred in anticipation of competing for the specific contract at issue," *see* Pl.'s Reply at 13–14 (quoting *Tri Tool, Inc.*, 1997 WL 561351, at *2), cannot overcome the undisputed fact that Alabama Aircraft did not contemplate developing its own proposal prior to June 2006.

Bid preparation and proposal costs have been awarded to a successfully protesting offeror for costs sustained prior to the solicitation only when it was working on its own proposal. *See Naplesyacht.com, Inc. v. United States*, 2005 WL 6112642, at **2–3 (Fed.Cl. Mar.31, 2005). The fact that Alabama Aircraft was in part able to incorporate its work in assisting Boeing into its own proposal is not sufficient to support recovery of the costs it experienced while working with Boeing. The efforts it undertook while working with Boeing might have better positioned Alabama Aircraft to perform any contract that might be awarded, but the expenses of those efforts do not constitute costs of preparing Alabama Aircraft's own proposal. *See Coflexip*, 961 F.2d at 953 ("[C]osts which do not support an initial or revised proposal are costs which a contractor incurs in an effort to better position itself to perform any contract it should be awarded."). Thus, Alabama Aircraft is unable to recover the labor costs it incurred while working as a subcontractor on Boeing's proposal.

■ The government asserts that Alabama Aircraft is precluded from recovering any of the labor costs it sustained in 2006, even those that occurred after the termination of Alabama Aircraft's partnership with Boeing, arguing that there is no meaningful way to determine the portion of the costs in 2006 that were attributable to Alabama Aircraft's work as a subcontractor on Boeing's proposal. Def.'s Resp. at 18. The court has examined the declarations and exhibits submitted by Alabama Aircraft to discern whether Alabama Aircraft's work on the joint proposal with Boeing can be segregated from work on its own proposal. No principled

basis for making such a separation appears to be available. "Where allowable and unallowable costs are aggregated into a single claim and the court cannot discern from the record before it what portion is allowable, the single claim must be disallowed, regardless of whether the court recognizes that some portion of that claim may be allowable." *Lion Raisins,* 52 Fed.Cl. at 633 (citations omitted). Accordingly, Alabama Aircraft's request to recover its 2006 labor costs must be rejected on this ground.

For 2007, Alabama Aircraft seeks to recover $289,887.31 in burdened labor costs. *See* Pl.'s Application, Shealy Decl., Ex. B (Total Labor Costs) at 2; Walker Decl. at 3. In 2007, Alabama Aircraft incurred all of its labor costs in pursuing its own KC–135 PDM proposal. The declarations and exhibits submitted by Alabama Aircraft are sufficient to substantiate the amount requested and explain how that amount was calculated. As the amount sought is both reasonable and allocable, Alabama Aircraft can recover the $289,887.31 it expended on labor costs in 2007.

### 2. Internal expenses.

Alabama Aircraft seeks to recover $88,201.42 from the government for costs it classifies as "internal expenses." Pl.'s Application at 4. In its application, Alabama Aircraft denominates "travel and other expenses" it incurred while "working on [its] proposal" as internal expenses. Shealy Decl. at 1. Alabama Aircraft claims that it incurred $52,498.01 in internal expenses in 2005, $28,436.07 in internal expenses in 2006, and $7,267.34 in internal expenses in 2007. Shealy Decl. at 3. A majority of the internal expenses incurred by Alabama Aircraft occurred when it was formulating a joint proposal with Boeing. *See id.* The government asserts that Alabama Aircraft is not entitled to recover its claimed internal expenses because "these [ ] costs were either not supported by any contemporaneous substantiating evidence or because the costs were incurred prior to June 2006, which is when Boeing terminated its subcontract[ing] arrangement with Alabama Aircraft." Def.'s Resp. at 19.

As discussed previously, costs that Alabama Aircraft sustained when it was working as a subcontractor for Boeing are not properly recoverable as bid preparation and proposal costs. The government does not have to reimburse Alabama Aircraft for any "internal expenses" that it incurred prior to June 2006, when it began to develop its own individual proposal. Thus, Alabama Aircraft cannot recover the $52,498.01 of internal expenses that it incurred in 2005.

Alabama Aircraft's request for reimbursement for internal expenses it incurred in 2006 does not distinguish between the costs it incurred when working as a subcontractor for Boeing and those sustained in formulating its own proposal. Pl.'s Application, Shealy Decl., Ex. D (Internal Expenses for 2005 to 2007 (Oct. 28, 2008)). The government claims that Alabama Aircraft cannot recover any of the internal expenses it incurred in 2006 because there is no method of determining whether the costs were incurred while it worked with Boeing or in developing its own bid proposal. *See Lion Raisins,* 52 Fed.Cl. at 633. Here, however, the government's reliance on the separability principle is misplaced. Alabama Aircraft submitted 314 pages of receipts to the court to substantiate its request for reimbursement of its internal expenses. Pl.'s Application, Shealy Decl., Ex. E. The court is able to review the dates of the receipts to determine whether Alabama Aircraft incurred the cost after it had initiated work on its own proposal. After reviewing the receipts, Alabama Aircraft is able to recover $5,866.18 in internal costs that it expended after June 2006 in developing its own proposal.

The government asserts that Alabama Aircraft should only be allowed to recover $2,020.86 in internal expenses for 2007, claiming that Alabama Aircraft failed to properly substantiate the remainder of these expenses for 2007. Def.'s Resp. at 19–20. This argument by the government is unavailing because the receipts and declarations submitted by Alabama Aircraft serve as sufficient evidence to support its claim to recover the internal expenses it incurred in 2007. Alabama Aircraft has sustained its burden of showing that the $7,267.34 in internal ex-

penses it incurred in 2007 was reasonable and allocable and therefore it is entitled to recover that amount from the government. In total, Alabama Aircraft is entitled to recover $13,133.52 in internal expenses from the government.

### 3. Consultants' fees and expenses.

■ In preparing its proposal for the KC–135 PDM contract, Alabama Aircraft retained three consultants: Shipley Associates, Dayton Aerospace, and Michael B. Taggart. Shealy Decl. at 3. Alabama Aircraft paid Shipley Associates $626,976.13 for assistance in drafting its proposal, $77,876.89 to employ Dayton Aerospace as a technical advisor in formulating its proposal, and Michael B. Taggart $13,540.65 "to assist in the preparation of [Alabama Aircraft's] proposal." Shealy Decl. at 4. These payments total $718,393.67 to consultants. Alabama Aircraft initially sought to recover $716,393.67 from the government for expenditures it made in retaining and employing consultants who provided assistance in preparing its proposal. Pl.'s Application at 4. Subsequently, it determined that it had slightly overstated the claimed amount and now seeks to recover $714,590.72 for consultants' fees and expenses. *See* Pl.'s Reply. at 1; Def.'s Resp. at 19.

The government resists Alabama Aircraft's entitlement to recover any of these claimed expenses, claiming that Alabama Aircraft has failed "to break out these costs in any manner." Def.'s Resp. at 18. Alabama Aircraft responds that its consultants "were not hired until after the Boeing–Alabama Aircraft team split" and worked solely on its own individual proposal. Pl.'s Reply at 17 (citing Walker Decl. at 2–3). Additionally, Alabama Aircraft cites to the fact that none of the invoices from their consultants "predate the termination" of Boeing's partnership with Alabama Aircraft. *Id.*[8] Mr. Walker, Alabama

Aircraft's Director of Business Development, stated that "Alabama Aircraft [had to] . . . hire outside consultants" to assist in drafting the company's proposal because of the short time frame in which it was required to present its initial proposal to the Air Force. Walker Decl. at 2–3. The invoices submitted by Alabama Aircraft and the Declaration of Mr. Walker are sufficient to demonstrate that the work undertaken by the consultants was attributable solely to the development of Alabama Aircraft's own proposal.

The Air Force claims that Alabama Aircraft should not be able to recover $14,323.32 it reimbursed Shipley Associates for attendance at a three-day writing workshop. Def.'s Resp. at 19. The workshop that Shipley Associates attended was entitled "Writing Winning Proposals: Capturing Federal Business." Pl.'s Application, Shealy Decl., Ex. G (Invoices from Shipley Associates) at 6. Alabama Aircraft claims this expense is recoverable because it "is 'not a company in the bid proposal writing business' " and thus attendance at the workshop was necessary to learn how to draft the company's proposal. Pl.'s Reply at 17 (quoting *Beta Analytics,* 75 Fed. Cl. at 163). Alabama Aircraft cannot recover the $14,323.32 it paid Shipley Associates to attend the writing workshop because it is unable to demonstrate that the cost was "incurred specifically for the contract." *Coflexip,* 961 F.2d at 953–54. Attending a writing workshop on bid preparations might be a reasonable and ordinary business expense, but it was not directly related to its proposal for the contract at issue. Thus, Alabama Aircraft cannot recover the $14,323.32 that it paid Shipley Associates to attend the writing workshop.

### CONCLUSION

For the foregoing reasons, Alabama Aircraft is entitled to receive bid preparation

---

8. Despite this assertion by Alabama Aircraft, the summary of invoices that Alabama Aircraft submitted with its application for bid preparation and proposal costs shows that it received an invoice in February 2006 from Dayton Aerospace, which is prior to the June 2006 termination of the company's partnership with Boeing. Pl.'s Application, Shealy Decl., Ex. H (Dayton Invoices (Oct. 28, 2008)) at 2. However, the attached invoice shows that the costs actual-

ly were incurred in February 2007, and thus the date on Dayton Aerospace's invoice is manifestly in error. Pl.'s Application, Shealy Decl., Ex. H (Dayton Invoices (Oct. 28, 2008)) at 31. Similarly, in its summary of invoices submitted by Michael Taggart, Alabama Aircraft transcribed the incorrect date from the first invoice into the summary. *See* Pl.'s Application, Shealy Decl., Ex. I (Taggart Invoices (Oct. 28, 2008)) at 2–3.

and proposal costs consisting of $289,887.31 for burdened labor costs, $13,133.52 for internal expenses, and $700,267.40 for consultants' fees and expenses. The clerk shall enter judgment for plaintiff in the total amount of $1,003,288.23.

Because this decision might contain "confidential or proprietary information" within the meaning of RCFC 26(c)(7) and the protective order issued in this case, it is being issued under seal. The parties are requested to review the decision and submit any proposed redactions to the court on or before February 2, 2009.

It is so ORDERED.